UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 18-88 (DWF/SER)

          Plaintiff,

v.                                            **ORDER AND MEMORANDUM**

Omar Kashaka Taylor,

          Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Omar Kashaka Taylor's ("Defendant") Motion for New Trial. (Doc. No. 115.) Defendant moves for a new trial on the basis that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt regarding the defendant committing any acts "in interstate commerce" or "in and affecting interstate commerce." The United States ("the Government") opposes Defendant's motion in all respects. (Doc. No. 116.) For the reasons set forth below, the Court denies Defendant's motion.

## BACKGROUND

Defendant went to trial on one count of Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591(a),(b)(2), and (c), 1594(a), and 3559(e); two counts of Sex Trafficking by Force, Fraud, or Coercion in violation of 18 U.S.C. §§ 1591(a) and (b)(1), 1594(a), and 3559(e); and one count of Commission of a Felony Offense Involving a Minor When Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A. On

February 5, 2019, following a seven-day trial, a jury returned verdicts of guilty on all counts. (Doc. Nos. 106, 107.) The evidence at trial established that from in or about August of 2017 through in or about March of 2018, Defendant, a registered sex offender, ran an unlicensed "massage parlor" out of a residential duplex on Spring Street in Northeast Minneapolis where women performed commercial sex acts, and that Defendant collected a portion of the women's earnings.

## DISCUSSION

Federal Rules of Criminal Procedure 33(a) provides that a Court may grant a new trial "if the interests of justice so requires." Fed. R. Crim. P. 33(a). This is a discretionary decision that rests with the Court. *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). "A district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (citation omitted). "When faced with a motion for new trial, . . . a district court is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required." *United States v. Samuels*, 543 F.3d 1013, 1019 (8th Cir. 2008) (citation omitted). Although the Court has broad discretion in deciding a motion for new trial, it "must exercise the Rule 33 authority sparingly and with caution." *McClellon*, 578 F.3d at 857 (quotation marks and citation omitted).

Defendant argues that the evidence presented at trial was insufficient to prove guilt beyond a reasonable doubt regarding the Defendant committing any acts in "interstate commerce" or "in and affecting interstate commerce."

Title 18, United States Code 1591(a), "Sex trafficking of children or by force, fraud, or coercion" provides:

> (a) Whoever knowingly-
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished.

18 U.S.C. § 1591(a).

In its Jury Instructions, the Court explained to the jury that the third element of the sex trafficking charges requires that the Government prove beyond a reasonable doubt that the Defendant's sex trafficking activities were either in interstate commerce or affected interstate commerce. As to the "interstate commerce" element, the Court stated:

> "Interstate commerce" means the flow of commerce or business activities between any point in one state and any point outside of that state.
>
> Acts and transactions which are economic in nature and cross state lines are "in" interstate commerce. Transporting people across state lines for a commercial purpose is interstate commerce.

3

> Acts and transactions which are economic in nature and affect the flow of money in the stream of commerce to any degree, however minimal, "affect" interstate commerce. To show that the defendant's conduct affected interstate commerce, it is not necessary for the government to prove that the defendant specifically knew or intended that the recruiting, enticing, harboring, transporting, providing, obtaining, advertising or maintaining a person to engage in commercial sex acts in which the defendant knowingly participated would affect interstate commerce; it is only necessary that the natural consequences of such conduct would be to affect interstate commerce in some way, even if minor.
>
> In determining whether the defendant's conduct was "in or affecting interstate commerce," you may consider whether the defendant used means or facilities of interstate commerce, such as telephones, the Internet or hotels that serviced interstate travelers, or whether the defendant's conduct substantially affected interstate commerce by virtue of the fact that the defendant purchased items that have moved in interstate commerce.

(Doc. No. 103 at 19-20.)

Defendant argues that there was insufficient evidence and no physical proof that Defendant used interstate commerce or used any means or facilities of interstate commerce, such as telephones, the Internet or hotels that serviced interstate travelers, or that Defendant's conduct substantially affected interstate commerce by virtue of the fact that the Defendant purchased items that have moved in interstate commerce. Instead, Defendant submits that the evidence has shown that others used telephones to post ads and advertise services for themselves. Defendant submits that nothing was extracted from any of Defendant's devices that showed that Defendant used telephone or hardware devices, or that Defendant used any such device for the purposes as alleged in the Indictment. Specifically, Defendant argues that nothing was extracted from any electronic devices retrieved from the Spring Street house in Minneapolis, Minnesota or

4

the apartment on Bellows Street in St. Paul, Minnesota that demonstrates, beyond a reasonable doubt, that Defendant committed any acts in or affecting interstate commerce. Based on this asserted lack of evidence, Defendant moves for a new trial.

The Court summarizes the evidence presented at trial below. At all times relevant to the indictment, Backpage.com was a classified advertising website that offered listings for a variety of products and services, including adult services and massages. Defendant maintained a Backpage.com account that was opened using his e-mail account and the telephone number connected to a cell phone he was provided by his employer. Defendant also frequently received e-mail receipts from Backpage.com in his e-mail account, indicating payments made to Backpage.com to move advertisements into more visible positions on the website. (Gov't Exs. 67, 96.)

Homeland Security Investigations Special Agent Tonya Price testified that a comparison of the e-mail receipts in Defendant's account with Defendant's US Bank account and the Wells Fargo bank account of the mother of one of his children indicated that Defendant was paying for the Backpage.com advertisements. Evidence at trial shows that Backpage.com was headquartered in Houston, Texas, and maintained its computer servers in Arizona. Thus, advertisements or data posted to Backpage.com would travel to and be maintained on the servers in Arizona so that they could be displayed on the Backpage.com website.

The charges for the Backpage.com advertisements appeared on the bank statements as charges for "Visa MP*AD POSTING" or "Adverts*MP," with a vendor contact number in the Netherlands. (Gov't Exs. 48, 85b, 86, 96.) From July 2017 and

February 2018, Defendant spent approximately $1,900 on Backpage.com advertisements. Special Agent Price testified that, in her experience, advertisements posted on Backpage.com were processed by third-party processors outside of the United States because, during the relevant time period, American financial institutions were not willing to process Backpage.com charges. All of the charges included international transaction processing fees. (Gov't Ex. 48.)

Additional witnesses, including Mor Vang, R.T., S.N., and A.L, testified that Defendants posted advertisements on Backpage.com for their massage services. Indeed, R.T., S.N., and A.L. testified that they never posted their own advertisements and that Defendant was the only one who did so. The advertisements of S.N. and R.T. on Backpage.com contained images of them, some with them in their underwear and/or in suggestive poses. (Gov't Exs. 19, 20, 27, 28, and 29.) Both R.T. and S.N. testified that Defendant took some of these pictures to use in Backpage.com advertisements. (Gov't Ex. 20.) In addition, R.T., S.N., and A.L. testified that Defendant wrote the text for the Backpage.com advertisements. The text often suggested, without the victims' knowledge, that commercial sex acts would be performed during the massages. (Gov't Exs. 19, 20, 27, 28, 29, 37, and 38.)

The Government also introduced evidence from service providers showing that many of the advertisements posted through Defendant's Backpage.com account were posted from the St. Paul apartment of Lynda Moua (the "Bellows Court apartment") where Defendant often spent time or stayed overnight with Moua and their daughter. (Gov't Exs. 42a-e, 44a-d.)

In addition to Backpage.com, Mor Vang, R.T., S.N, and A.L all testified that they and Defendant used an application called TextNow to communicate with potential customers. TextNow is an application that allows users to send and receive text messages and to make and receive phone calls using WiFi or another Internet connection rather than a service plan on a cell phone. The TextNow numbers were listed in the Backpage.com advertisements. Witnesses testified that Defendant used the TextNow application to schedule appointments, communicate with potential customers, or to allow others to schedule appointments or speak to potential customers on his phone.

Special Agent Price testified that law enforcement obtained the content of messages sent to and from the TextNow numbers listed in the Backpage.com advertisements that were posted under Defendant's account, including the number listed for advertisements for S.N., R.T. and others from August 2017 through October of 2017. In addition, Special Agent Manuel Jimenez offered testimony regarding evidence showing that Defendant posed as women and exchanged messages with potential customers to schedule message appointments involving sex acts. (Gov't Exs. 74a, 74b, 74g, 74l, 74p, 74r.)

Evidence at trial also demonstrated that Defendant used social media and, in particular Facebook, to facilitate his sex trafficking venture. Defendant met S.N. through Facebook. In addition, Defendant used Facebook to recruit S.N, arrange transportation for S.N. to and from the Spring Street house, and to entice S.N. to work at the Spring Street house using the promise of drugs that S.N. was addicted to at the time. (Gov't
7

Ex. 24.) Defendant also used Facebook to communicate with others about illicit massage appointments. (Gov't Exs. 73b, 92, 93.)

Special Agent Price also testified that on the day that Defendant was informed about the federal investigation into Defendant's activities at the Spring Street house, he obtained a new cell phone. (Gov't Exs. 54, 82a-b.) From that phone, Defendant discouraged a female associate from "talking to the feds" about Defendant. (Gov't Ex. 82a-b.)

The Court concludes that there is ample evidence that Defendant engaged in transactions that crossed state lines to further his sex trafficking venture. As outlined above, evidence at trial shows that Defendant purchased and created advertisements on Backpage.com that were transported and maintained at servers in Arizona. In addition, Defendant's transactions with Backpage.com impacted interstate and foreign commerce because the transactions were processed abroad. Further, evidence shows that Defendant used phones and the Internet to facilitate his sex trafficking venture, including the TextNow application on his cell phone and Facebook on the Internet. These activities easily satisfy the interstate commerce requirement. *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016); *United States v. Wearing*, 865 F.3d 553, 557 (7th Cir.), *cert. denied*, 138 S. Ct. 522 (2017). And while Defendant claimed that someone else, and not him, was engaging in these transactions and using his accounts and cell phone, the jury reasonably found that contrary evidence, both in the form of the victim's testimony and other evidence outlined above, was credible.

Based on the above, the Court finds that the interests of justice do not require this Court to vacate the verdict rendered and allow for a new trial. Simply stated, there was no miscarriage of justice and there is ample evidence to support the jury's finding regarding the interstate commerce requirement. Therefore, the Court respectfully denies the Defendant's motion for a new trial.

## ORDER

Based upon the presentation and submissions of the parties, the Court having carefully reviewed the entire record in this matter, and the Court being otherwise duly advised in the premises,

**IT IS HEREBY ORDERED** that:

Defendant's Motion for a New Trial (Doc. No. [115]) is **DENIED**.

Dated: March 29, 2019        s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge